# Exhibit 1

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **POPILUSH LLC** | Case No. 25-cv-10581 |
| *Plaintiff*, | Judge Thomas M. Durkin |
| v. | ████████████████ |
| **THE PARTNERSHIPS AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A,"** | |
| *Defendants.* | |

**PLAINTIFF'S UNOPPOSED MOTION TO REASSIGN AND CONSOLIDATE RELATED CASES UNDER LOCAL RULE 40.4 AND FEDERAL RULE OF CIVIL PROCEDURE 42**

Plaintiff Popilush LLC ("Popilush") moves to reassign and consolidate one pending case on substantially similar legal and factual issues with this case currently before this Court. This case is "related" under Local Rule 40.4(a) and satisfies the conditions for reassignment under LR 40.4(b). It also "involve[s] a common question of law or fact" and is therefore proper for consolidation under Rule 42. Given the substantial overlap, reassignment and consolidation will promote judicial economy.

Of the defendants that have appeared, ChicMe does not oppose the motion. The other defendants, who have not appeared, were advised of the motion but have not responded.

**I.      The Two Cases Are Related**

Popilush filed this case—25-cv-10581—on September 3, 2025 ("Case 1"). It is a four count action ████████ seller aliases in Schedule A for patent and copyright infringement, violations of the Lanham act, and unjust enrichment.

1

Popilush also filed the following case asserting virtually identical intellectual property against substantially similar conduct:[1]

a. *Popilush LLC v. The Partnerships And Unincorporated Associations Identified On Schedule "A"*, Case No. 1:25-cv-15642, (Dec. 23, 2025) (Rowland, J.) ("Case 2"). Ex. A.

The legal issues across the two cases are virtually identical:



The factual issues are substantially similar. Case 2 is an action to stop online Seller Aliases ("Sellers") from selling counterfeit and knockoff products online. *See* Case 1 (███████████ ███); Case 2 (███████████████). Ex. A.

The procedural posture of Case 2 is also substantially similar. In Case 1, this Court, granted Popilush's motion for preliminary injunction against 5 no-show Sellers (Dkt. No. 49), and Popilush is engaged in settlement negotiations against the remaining 2 Sellers. Case 2 has no deadlines scheduled and are all awaiting a ruling on Popilush's Ex Parte Motion for Temporary Restraining Order, Preliminary Injunction, Asset Restraint, and Expedited Discovery, among a few other additional procedural motions. *See* Case 2 at Docket.

These pending motions in Case 2 are substantially similar—and in many respects virtually identical—to the motions this Court has ***already*** reviewed and granted because of the substantial overlap in issues, law, and alleged conduct. This Court is therefore already substantially familiar with the law and facts of Case 2.

## II. The Law Supports Reassignment and Consolidation

"A district court has discretion to reassign a case pursuant to Local Rule 40.4" as well as "to consolidate actions involving a common question of law or fact pursuant to Federal Rule of Civil Procedure 42(a)." *Richburg v. Conagra Brands, Inc.*, No. 22 CV 2420, 2022 WL 16836408, at *2 (N.D. Ill. Nov. 9, 2022). "The Seventh Circuit has emphasized that related cases pending before the same court should be consolidated before a single judge to avoid wasteful overlap." *Id.* (citing *Blair v. Equifax Check Servs.*, 181 F.3d 832, 839 (7th Cir. 1999)).

Local Rule 40.4(a) provides that "[t]wo or more civil cases may be related if **one** or more of the following conditions are met" here:

(1) the cases involve the same property;

(2) the cases involve some of the same issues of fact or law;

(3) the cases grow out of the same transaction or occurrence; or

(4) in class action suits, one or more of the classes involved in the cases is or are the same.

LR 40.4(a) (emphasis added). Case 2 satisfies at least prongs (1)-(3). *Id.* Case 2 involves identical issues of fact and law. *Id.* Case 2 grows out of the same transaction or occurrence as it involves substantially similar factual conduct: Sellers selling knockoff shapewear online. *Id.*

Case 2 satisfies the conditions for reassignment under Local Rule 40.4(b) because:

(1) [all] cases are pending in this Court;

(2) the handling of [all] cases by the same judge is likely to result in a substantial saving of judicial time and effort;

(3) the earlier case has not progressed to the point where designating … later filed case[s] as related would be likely to delay the proceedings in the earlier case substantially; and

(4) the cases are susceptible of disposition in a single proceeding.

LR 40.4(b). First, Cases 1 and 2 are pending in this Court. *See* Cases 1-2 at Docket. Second, reassignment will "result in a substantial saving of judicial time and effort" because this Court is already familiar with (a) the intellectual property at issue; (b) the facts at issue; and (c) the procedural posture of these cases. Every pending motion in Case 2 is substantially similar—and in many instances identical—to the motions this Court has reviewed and ruled on. Further, Case 2 asserts the same four counts of law and asserts virtually identical intellectual property against substantially similar conduct. What this Court can resolve in one order, would take a separate orders from a separate Court.

A finding against reassignment guarantees that another court will have to address all of these exact same issues, reviewing substantially similar complaints, briefs, law, and facts. Given all of this overlap, there is no need to force another court to do what this Court can handle in one fell swoop with a consolidated action.

Not only will granting this motion save another court the time that can be accomplished in one, the Court will lose no filing fees as Popilush duly filed and paid (or is in the process of finalizing payment) for each of the cases' filing fees.

Third, Case 1 has not progressed to a point where joining Case 2 is "likely" to "substantially" delay it. Case 1 has no discovery or other immediate deadlines. Five Sellers have failed to appear and the other two are in ongoing settlement negotiations with Popilush. And as is often the case in Schedule A litigation, should the remaining Sellers in Case 2 also fail to answer or appear, this Court can address the default judgments issues in one collective order—rather than burdening the docket of another courts.

For all these reasons too the fourth prong is satisfied as both cases can be resolved in a single disposition. Courts in this district routinely handle *single* Schedule A cases with more Sellers than Popilush has identified in these two cases.

For all these reasons consolidation under Rule 42 is proper because the actions "involve a common question" of both "law" and "fact." Fed. R. Civ. P. 42. Indeed, "[e]fficiency interests" often "provide the first, and strongest, basis for consolidation . . . ." *Washington v. Boudreau*, No. 16-cv-01893, 2023 WL 184239, at *3 (N.D. Ill. Jan. 13, 2023). Consolidation would promote efficiency because, for example, this Court could resolve all the pending motions currently before two Courts in one Order—with minimal additional effort given the substantial overlap in issues—of which this Court is already familiar. *Id.*

Under these circumstances, it is well within this Court's discretion to grant a motion to reassign and consolidate to promote judicial efficiency. LR 40.4; Fed. R. Civ. P. 42. Indeed "[c]laims need not 'neatly overlap' to warrant consolidation…. Rather, Rule 42 requires only '*a* common issue of law or fact.'" *James Tuccori, individually and on behalf of all others similarly*

5

*situated, v. At World Props.*, No. 24-cv-150, 2025 WL 2976481, at \*2 (N.D. Ill. Oct. 22, 2025) (finding consolidation appropriate despite differences between cases because "all seven cases concern brokerages, brokerage franchisors, and other real estate companies alleged efforts to inflate real estate commissions paid to brokers") (citing *Brunner v. Jimmy John's, LLC*, 2016 WL 7232560, at \*2 (N.D. Ill. Jan. 14, 2016)); *Johnson v. Ford Motor Co*., 2024 WL 1328829, at \*3 (N.D. Ill. Mar. 28, 2024) ("Reassignment and consolidation of *Dorfman* with *Johnson* is warranted here because their factual and legal issues significantly overlap. Both suits center on alleged defects in and representations or omissions about Ford's 360-degree camera system. Both cases are putative class actions asserting claims under the Magnuson-Moss Warranty Act and state warranty and consumer protection statutes. Both cases also assert common law fraud and unjust enrichment claims. Also, the Court finds, and the parties do not dispute, that the four conditions for reassignment under Local Rule 40.4(b) ….").

Dated: January 5, 2026

/s/ Wm. Brady Nash
Robert G. Pluta
rpluta@mayerbrown.com
MAYER BROWN LLP
71 S. Wacker Drive
Chicago, IL 60606
T: (312) 701-8641

Gary M. Hnath
ghnath@mayerbrown.com
Wm. Brady Nash
bnash@mayerbrown.com
MAYER BROWN LLP
1999 K Street N.W.
Washington, D.C. 20006
T: 1 202 263 3040
*Counsel for Popilush LLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing will be electronically filed with the Clerk of Court using the CM/ECF system, published on a website, and emailed to the email addresses of the Seller Aliases.

Dated: January 5, 2026

*/s/ Wm. Brady Nash*
Robert G. Pluta
rpluta@mayerbrown.com
MAYER BROWN LLP
71 S. Wacker Drive
Chicago, IL 60606
T: (312) 701-8641

Gary M. Hnath*
ghnath@mayerbrown.com
Wm. Brady Nash*
bnash@mayerbrown.com
MAYER BROWN LLP
1999 K Street N.W.
Washington, D.C. 20006
T: 1 202 263 3040
*Counsel for Popilush LLC*
*\* pro hac vice*

# Exhibit A

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| **POPILUSH LLC** | |
| *Plaintiff,* | |
| v. | Case No.1:25-cv-15642 |
| **THE PARTNERSHIPS AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A,"** | |
| *Defendants.* | |

### PLAINTIFF POPILUSH LLC'S COMPLAINT FOR PATENT INFRINGEMENT, COPYRIGHT INFRINGEMENT, FALSE DESIGNATION OF ORIGIN, AND UNJUST ENRICHMENT

Plaintiff Popilush LLC ("Popilush" or "Plaintiff") brings the present action against the Partnerships and Unincorporated Associations identified in Schedule A ("Defendants") and alleges as follows:

### I.  Jurisdiction and Venue

1.      This Court has original subject matter jurisdiction over the claims in this action under the provisions of the Patent Act, 35 U.S.C. § 1, et seq., as well as the provisions of 28 U.S.C. § 1338(a)-(b) and 28 U.S.C. § 1331.

2.      Venue is proper in this Court under 28 U.S.C. § 1391 and 28 U.S.C. § 1400(a). This Court may exercise personal jurisdiction over Defendants as the Defendants target business activities toward consumers in the United States, Chicago, Illinois, and this Judicial District, through at least the fully interactive, e-commerce stores operating under the seller aliases identified in Schedule A ("Seller Aliases").

3.     Defendants have established and operate e-commerce stores that target sales from Illinois residents by using one or more Seller Aliases. Defendants offer shipping into the United States, including Illinois. Defendants accept payment in U.S. dollars and/or funds from U.S. bank accounts. On information and belief, Defendants sell, and have sold, products to Chicago, Illinois residents that infringe Popilush's patents, copyrights, and other intellectual property, and that otherwise violate the Lanham Act. Defendants are engaging in interstate commerce, committing tortious acts in Illinois, and causing Popilush substantial injury in the State of Illinois.

## II.     Introduction

4.     Popilush brings this case to combat Defendants' willful infringement and violations of Popilush's intellectual property rights, including: █████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████ violations of the Lanham Act, including false designation of origin. *Id.* These unauthorized products are collectively referred to as the "Infringing Products." Exs. 1, 3 (identifying the Infringing Products).

5.     Defendants' willful acts of ████████████████████████████████ false designation of origin under the Lanham Act are causing irreparable harm to Popilush and are damaging the value and goodwill associated with Popilush's intellectual property rights.

6.     Defendants create and operate e-commerce stores under one or more Seller Aliases through which they make, use, offer for sale, sell, and import into the United States for subsequent sale or use the Infringing Products, deceiving and misleading unwitting consumers.

7.     On information and belief, Defendants share unique identifiers—such as similar advertisements, instructions, symbols, and images—that establish a logical relationship among them and show a coordinated operation arising from the same transaction, occurrence, or series of transactions or occurrences.

8.     Defendants seek to avoid and mitigate liability by operating under one or more Seller Aliases to conceal their identities and the scope of their illicit operations.

9.     Popilush files this action ████████████████████████ ████████, to end the Defendants' willful Lanham Act violations, to protect unknowing consumers from purchasing knockoff, Infringing Products, and to stop the ongoing sale of Defendants' Infringing Products.

10.    Popilush has been and continues to be irreparably harmed by Defendants' unlawful conduct, including ██████████████████████████████████ ████████████████████████████████████████████ ████████████████████ Defendants' false designation of origin and other violations of the Lanham Act. Popilush seeks injunctive, equitable, and monetary relief as stated in this Complaint.

## III.    The Parties

### Plaintiff Popilush

11.    Popilush is a limited liability company registered in Virginia with its principal place of business at 575 8th Avenue, Suite 608, New York, NY, 10018, USA.

12.    Launched in 2022, Popilush was founded by Ms. Eve DeMartine. While raising twins, working in the makeup department at Macy's, and saving every penny for her business, Ms. DeMartine spent her nights working to achieve her dream: to launch her own brand and business, Popilush.

13.     Since 2022, Popilush has blossomed into one of the most cherished direct-to-consumer fashion shapewear brands. Embraced for its empowering, inviting, and fashion-forward shapewear line for women, Popilush's mission is to promote body positive, comfortable confidence, and commitment to the environment. Popilush's mission is to give all women the freedom and confidence to be themselves every single day with high-quality and affordable shapewear.

14.     Popilush's positive business outlook and high-quality products have garnered a massive online following with over 400,000 global followers, 3,500 affiliate marketers, and 1,500,000 dresses sold to date. Popilush currently sells 3 dresses every minute.

15.     This rapid success earned Ms. DeMartine the honor of being named to Inc.'s 2025 Female Founders 500 List.[1]

16.     Popilush's products are distributed and sold online to consumers through retailers throughout the United States, including through authorized retailers in Illinois, the official https://www.popilush.com/ website, and retail channels including Amazon, Nordstrom, Poshmark, eBay, and Alibaba.

17.     Popilush's products are also promoted and sold offline, in traditional brick and mortar retail stores, including Nordstrom.

18.     Popilush's products are known for their distinctive ████ body-shaping technology and designs. This technology is broadly recognized—and sought after—by consumers. In fact, the ████ body-shaping technology of Popilush's clothing is a key selling point.

---

[1] *Inc. Names Popilush CEO Eve DeMartine to Its 2025 Female Founders 500 List*, PR NEWSWIRE, (Mar. 11, 2025) (https://www.prnewswire.com/news-releases/inc-names-popilush-ceo-eve-demartine-to-its-2025-female-founders-500-list-302396753.html) ("Inc., the leading media brand and playbook for the entrepreneurs and business leaders shaping our future, today announced its eighth annual Female Founders list, honoring a bold group of 500 women whose innovations and ideas are leading their industries forward including Eve DeMartine, CEO and founder of viral shapewear fashion brand Popilush. These resilient entrepreneurs expressed grit and drive to collectively attract approximately $9 billion in 2024 revenue and $10.6 billion in funding.").

Customers actively seek out Popilush's ▓▓▓▓ technology as what distinguishes Popilush's brand, clothing, and business from competitors.

19. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

20. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

---

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓





21.    Popilush is the lawful assignee of all right, title, and interest in and to the Popilush Technology; ███████████████████████████████████████████████████ ███████████████████████████████████████████.

22.    Popilush is also the rightful owner, with all right, title, and interest in, ████████ ███████████████████████████████████████████████████ ███████████████████████████████████████████████████

███████████████████████████████████████

██████████████████████████████████

23.     Popilush expends considerable resources on its brand, advertising, and developing its customer good will; ██████████████████████████████████

███████████████████████████████████████

████████████████████████████████ Collectively, Popilush's Technology, ██████████████████████ shall be referred to as "Popilush's Intellectual Property" or "Intellectual Property."

**The Defendants**

24.     Defendants are an unknown number of individuals and business entities who own, operate, and conduct their infringing conduct out of one or more of the e-commerce stores identified in Schedule A, including through Seller Aliases not yet known to Popilush, as well as other anonymous sources. On information and belief, Defendants reside and operate in the People's Republic of China and other foreign jurisdictions or redistribute products from the same or similar sources in those locations. Defendants have the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b).

25.     On information and belief, Defendants either individually or jointly, operate one or more e-commerce stores under the Seller Aliases listed in Schedule A. The tactics Defendants use to conceal their identities and their illicit operations frustrate Popilush's ability to discover Defendants' true identities and the exact interworking of their network. If Defendants provide additional credible information regarding their identities, Popilush will take all appropriate steps to amend the Complaint.

## IV.    Defendants' Unlawful Conduct

26.    In recent years, Popilush has identified many fully interactive, e-commerce stores, including those operating under the Seller Aliases, offering for sale and/or selling Infringing Products on online marketplace platforms, including but not limited to, Amazon, Shopify, TikTok, Shein, Alibaba International Station, AliExpress, TEMU, eBay, Wish.com, Walmart, Etsy, DHgate, and Shopline, including e-commerce stores created and operated by and under the Seller Aliases themselves, and further including website hosting providers or website builders such as, but not limited to, GoDaddy, Bluehost, HostGator, Squarespace, Wix, Weebly, BigCommerce, WooCommerce, WordPress.com, and cloud providers ("Third Party Providers").

27.    The Seller Aliases target consumers in this Judicial District and throughout the United States. *See, e.g.*, Schedule A; Ex. 1, Ex. 3

28.    According to a U.S. Customs and Border Protection (CBP) Report ("CBP Report"), "From FY 2020 to FY 2024, the total number of goods seized for IPR violations has more than doubled, and the total manufacturer's suggested retail price (MSRP) of goods seized for IPR violations compared to FY 2023 has increased by 95% in FY  2024." Ex. 5 at 2.



29. Further, apparel—███████████████████████████—accounted for $178,985,556 worth of IPR infringement MSRP with 1,043,853 articles of wearing apparel seized. *Id.* at 3.

30. The CBP Report notes that "China and Hong Kong are consistently the top two countries for IPR seizures. In FY 2024, seizures from China and Hong Kong accounted for approximately 90% of the total quantity seized." *Id.* at 4.



31. The CBP Report notes that "IPR violative goods threaten American innovation and competitiveness." *Id.* at 3.

32. It is widely recognized that third-party service providers—like those used by Defendants to sell their infringing goods on—do not adequately police or verify sellers' identities. Ex. 6 at 186. This allows Defendant infringers to "routinely use false or inaccurate names and addresses when registering with these e-commerce platforms." *Id.*

33.     Indeed, "[w]hen brand owners pursue counterfeiters in enforcement actions, **they discover that names and addresses are fictional**, and the counterfeiters then disappear into the vast expanse of cyberspace." *Id.* (emphasis added).

34.     This is precisely why the U.S. Department of Homeland Security has noted that "[a] key underlying problem here is that on at least some e-commerce platforms, little identifying information is necessary for a counterfeiter to begin selling. In the absence of full transparency, counterfeiters can quickly and easily move to a new virtual store if their original third-party marketplace is taken down." Ex. 7 at 22 ("In some cases, counterfeiters hedge against the risk of being caught and their websites taken down from an e-commerce platform by preemptively establishing multiple virtual store-fronts.").

35.     Indeed, "[p]latforms generally do not require a seller on a third-party marketplace to identify the underlying business entity, nor to link one seller profile to other profiles owned by that same business, or by related businesses and owners. In addition, the party that appears as the seller on the invoice and the business or profile that appears on the platform to be the seller, may not always be the same. **This lack of transparency allows one business to have many different profiles that can appear unrelated**. It also allows a business to create and dissolve profiles with greater ease, which can obfuscate the main mechanism that consumers use to judge seller credibility, namely reviews by other buyers." *Id.* at 39 (emphasis added).

36.     Defendants concurrently employ and benefit from substantially similar advertising and marketing strategies—designed to mimic licensed, authorized business. For example, Defendants facilitate sales by designing virtual store-fronts and e-commerce stores operating under the Seller Aliases so that they appear to unknowing consumers as authorized online retailers, outlet stores, or wholesalers. Exs. 1, 3.



37.     Defendants include content and images that make it difficult for consumers to distinguish such stores from an authorized retailer. *Id.*

38.     Defendants have ██████████████████████████████████████████
████████████████████████████████████████████████████████████
███████████████████████████████

39.     Through the use of these tactics, █████████████████████████, and sales of the Infringing Products, Defendants appear as legitimate, sophisticated, and reputable business.[3] They exhibit many of the characteristics of an authentic business. Exs. 1, 3. And they accept payment in U.S. dollars or funds from U.S. bank accounts via credit cards, Alipay, Amazon Pay, and/or PayPal. *Id.*

40.     Popilush has not licensed or authorized Defendants to use the Popilush Technology—nor any of its products or Intellectual Property. None of the Defendants are authorized retailers of genuine Popilush products, Technology, or Intellectual Property. And none have any right, title, license, or authorization under █████████████████████████████
████████████████

41.     E-commerce store operators like Defendants engage in fraudulent conduct when registering the Seller Aliases by providing false, misleading, and/or incomplete information to e-commerce platforms to prevent discovery of their true identities and the scope of their e-commerce operation. *See, e.g.*, Exs. 6, 7.

42.     E-commerce store operators like Defendants register or acquire new seller aliases for the purpose of offering for sale and selling Infringing Products. *Id.* Such seller alias registration

---

[3] This problem is exacerbated by the fact that it is easier and cheaper than ever to quickly design and develop authentic looking virtual store-fronts—thus giving the appearance of an authentic business due to the professional and sleek looking websites Defendants are able to employ and sell the Infringing Products from.

patterns are one of many common tactics used by e-commerce store operators like Defendants to conceal their identities and the full scope and interworking of their operation, and to avoid being shut down. *Id.*

43.     Defendants exhibit a logical relationship amongst their Seller Alias, including ■

■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

44.     Based on Popilush's investigation to date, and on information and belief, similarities across Defendants' e-commerce stores show logical relationships between the Defendants and their infringing activity.

45.     ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■



46.     Whether one Defendant acting alone, or multiple Defendants acting in concert, the overlap of the Seller Aliases, the lack of identifiable information available regarding the Defendants, and the unfortunate rise in this form of illicit behavior shows, on information and belief, a logical relationship amongst the Defendant(s).

47.     On information and belief, e-commerce stores, such as Defendants, operating under the Seller Aliases include other common features, such as use of the same registration patterns, accepted payment methods, check-out methods, keywords, advertising tactics, similarities in price and quantities, the same incorrect grammar and misspellings, and/or the use of the same text and images. *See, e.g.*, Exs. 1, 3.

48.     On information and belief, products sold from e-commerce stores, such as Defendants, bear similar irregularities suggesting that the Infringing Products were manufactured by and come from a common source and that Defendants are interrelated. *See, e.g.*, *id.*

49. ███████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████

50. ███████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
████████████████

51. ███████████████████████████████████████████████████
███████████████████████████████████████████████████████

---

█████████████████████████████████████████████████████████
██████ ██████  ████  ████████ ███████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
██████████████████████████████████



52.

53.

16



54.

55.



56. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

57.     On information and belief, e-commerce stores, such as Defendants, operate under multiple seller aliases and payment accounts so that they can continue operation in spite of Popilush's enforcement. Ex. 7 at 13 ("For example, counterfeiters use legitimate images and

descriptions on online platforms to confuse customers, and they open multiple seller accounts on the platform so that if one account is identified and removed, the counterfeiter can simply use another."); *see also id.* at 39.

58.     On information and belief, e-commerce stores, such as Defendants, maintain off-shore bank accounts and move funds from their financial accounts to off-shore accounts outside the jurisdiction of this Court to avoid payment of any monetary judgment awarded to Popilush. *See, e.g.*, *id.* at 22; *see also* Ex. 11 at 1.

59.     On information and belief, e-commerce stores, such as Defendants, work in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell Infringing Products in the same transaction, occurrence, or series of transactions or occurrences. Exs. 1, 3, 8-12.

60.     Defendants, with no authorization or license from Popilush, have jointly, severally, knowingly, and willfully offered for sale, sold, and imported into the United States the Infringing Products for subsequent resale and use that to infringe ███████████████ the Popilush Technology. Ex. 1.

61.     Defendants, without authorization or license from Popilush, have jointly, severally, knowingly, and willfully reproduced, distributed, offered for sale, sold, and imported into the United States infringing products embodying ████████████████████ ████████████████████████████████ ████████████.

62.     Defendants, without authorization from Popilush, have jointly, severally, knowingly, and willfully offered for sale, sold, and imported into the United States products that violate ███████████ including by bearing false designations of origin, which are likely to

cause confusion, mistake, or deception as to the affiliation, connection, or association of Defendants with Popilush, or as to the origin, sponsorship, or approval of Defendants' products by Popilush, in violation of the Lanham Act. Exs. 1, 3, 13-15.

63.     Defendants, without authorization or license from Popilush, have jointly, severally, knowingly, and willfully ███████████████████████████████████ ████████████████████████████████████████████████ ██████████████████████████████ used false designations of origin in violation of the Lanham Act, as their conduct is likely to cause confusion, mistake, or deception regarding the affiliation, connection, or association of Defendants with Popilush, and the origin, sponsorship, or approval of Defendants' products. *Id.*

64.     Defendants offer shipping to the United States, including Illinois and this judicial district, and, on information and belief, each Defendant has sold Infringing Products into the United States and Illinois, including this judicial district, over the Internet. *Id.*

65.     Defendants' infringement of the Popilush Technology in the making, using, offering for sale, selling, and/or importing into the United States for subsequent sale or use of the Infringing Products was and remains willful. *Id.*; *see also* Exs. 8-13.

66.     Defendants' infringement of the Popilush Technology in connection with the making, using, offering for sale, selling, and/or importing into the United States for subsequent sale or use of the Infringing Products, including the making, using, offering for sale, selling, and/or importing into the United States for subsequent sale or use of Infringing Products into Illinois and this judicial district, is irreparably harming Popilush. *Id.*

## COUNT I

████████████████████████████████████████████
████████████

67.     Popilush hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

68.     Defendants are making, using, offering for sale, selling, and/or importing into the United States for subsequent sale or use Infringing Products that infringe directly and/or indirectly ████████████████ and the Popilush Technology.

69.     Defendants infringe ████████████ and the Popilush Technology through the aforesaid acts and will continue to do so unless enjoined by this Court. ████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████

70.     Popilush is entitled to recover damages adequate to compensate for the infringement, and all other damages, including ████████████████████████████ ████████████████████

71.     Popilush is entitled to enhanced damages for Defendants' willful infringement under ████████████████████████████████ ████████

72.     Popilush is entitled to recover reasonable attorneys' fees to compensate for the willful and deliberate pirating of the Popilush Technology ████████████████████ ████████████████████

## COUNT II

███████████████████████████████████████████
███████████████████████████████████████████
████████████████████████████████
██████████████

73.     Popilush hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

74.     Defendants, without authorization or license, have reproduced, distributed, publicly displayed, offered for sale, sold, and/or imported into the United States for subsequent sale or use products and online content that infringe ████████████████████████ ████████████████████ to promote and sell knockoff products.

75.     Defendants have infringed, and will continue to infringe, ██████████████████ through the aforesaid acts unless enjoined by this Court. Defendants' wrongful conduct has caused and continues to cause Popilush irreparable harm, including ████████████████████ ██████████████ damage to the value of its Intellectual Property. Popilush is entitled to injunctive relief pursuant to ████████████, including an order restraining Defendants' assets under this Court's equitable powers and Fed. R. Civ. P. 65 to preserve the availability of effective final relief.

76.     Popilush is entitled to recover damages adequate to compensate for Defendants' infringement, including its actual damages and Defendants' profits attributable to the infringement, pursuant to ██████████████████████████ ██████.

77.     Popilush is further entitled to recover its full costs and reasonable attorneys' fees ████████████████.

## COUNT III
## False Designation of Origin under the Lanham Act
## (15 U.S.C. § 1125(a))

79.     Popilush hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

80.     Defendants, without authorization or license, have reproduced, distributed, publicly displayed, offered for sale, sold, and/or imported into the United States for subsequent sale or use products and online content that infringes Popilush's Brand, trademarks, website images, symbols, and other source identifying materials to advertise and sell knockoff products that are confusingly similar to Popilush's goods and Brand.

81.     Defendants' use of Popilush's Brand, images, symbols, and other source identifying materials creates a false designation of origin, misleading consumers into believing that Defendants' products are affiliated, connected, or approved by Popilush, and constitutes willful infringement of Popilush's rights under 15 U.S.C. § 1125(a). Defendants' wrongful conduct has caused and continues to cause Popilush irreparable harm, including damage to its reputation, dilution of goodwill, and loss of control over its Brand and Intellectual Property. Popilush is entitled to injunctive relief pursuant to 15 U.S.C. § 1116, including an order restraining Defendants' assets under this Court's equitable powers and Fed. R. Civ. P. 65 to preserve the availability of effective final relief.

82.     Popilush is entitled to recover damages adequate to compensate for Defendants' wrongful acts, including Defendants' profits and any actual damages suffered by Popilush as a result of the false designation of origin, pursuant to 15 U.S.C. § 1117(a).

83.     Popilush is further entitled to recover its full costs and reasonable attorneys' fees pursuant to 15 U.S.C. § 1117(a).

## COUNT IV
## (Unjust Enrichment)

84. Popilush hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

85. Defendants, without authorization or license, have copied, reproduced, distributed, publicly displayed, and sold products and online content derived from Popilush's Technology, Copyrights, Brand, and Intellectual Property, including by copying Popilush's website images and symbols to sell knockoff products.

86. By engaging in these acts, Defendants have obtained and continue to obtain substantial profits and other benefits at the expense of Popilush, knowing that such use is wrongful and without justification.

87. Equity and good conscience require that Defendants be ordered to disgorge all profits, gains, and benefits they have unjustly received as a result of their infringing and unfair acts, and that Popilush be restored the value of what it has lost. Popilush is entitled to such equitable relief, including restitution and disgorgement of Defendants' ill-gotten gains.

88. Defendants' wrongful conduct has caused, and continues to cause, irreparable harm to Popilush for which there is no adequate remedy at law, and Popilush is entitled to any further equitable relief the Court deems just and proper.

## PRAYER FOR RELIEF

**WHEREFORE**, Popilush prays for judgment against Defendants as follows:

1. ███████████████ that Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under or in active concert with them, be temporarily, preliminarily, and permanently enjoined and restrained from:

      a.     making, using, offering for sale, selling, and/or importing into the United States for subsequent sale or use the Infringing Products;

      b.     making, using, offering for sale, selling, and/or importing into the United States for subsequent sale or use any product or information that infringes ████████ ████ or the Popilush Technology;

      c.     aiding, abetting, contributing to, or otherwise assisting anyone in making, using, offering for sale, selling, and/or importing into the United States for subsequent sale or use the Infringing Products; and

      d.     effecting assignments or transfers, forming new entities or associations or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth in Subparagraphs (a) and (b).

2.     ████████████ that Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under, or in active concert with them, be temporarily, preliminarily, and permanently enjoined and restrained from:

      a.     copying, distributing, displaying, offering for sale, selling, and/or importing into the United States unauthorized copies of the Infringing Products;

      b.     copying, distributing, displaying, offering for sale, selling, and/or importing into the United States any work that ████████████████;

      c.     aiding, abetting, contributing to, or otherwise assisting anyone in copying, distributing, displaying, offering for sale, selling, and/or importing into the United States unauthorized copies of the Infringing Products; and

        d.        effecting assignments or transfers, forming new entities or associations, or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth in Subparagraphs (a) and (b).

        3.        Under 15 U.S.C. § 1116, that Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under, or in active concert with them, be temporarily, preliminarily, and permanently enjoined and restrained from:

        a.        manufacturing, distributing, offering for sale, selling, and importing into the United States any product, including the Infringing Products, bearing false designations of origin, false descriptions, or misleading representations of fact that are likely to cause confusion with Popilush, its Technology, Brand, or trademarks;

        b.        manufacturing, distributing, offering for sale, selling, and importing into the United States any product, including the Infringing Products, that misrepresents its source, sponsorship, or affiliation with Popilush, its Technology, Brand, or trademarks;

        c.        aiding, abetting, contributing to, or otherwise assisting anyone in the acts described in Subparagraphs (a) or (b); and

        d.        effecting assignments or transfers, forming new entities or associations, or utilizing any other device to circumvent or otherwise avoid the prohibitions set forth in Subparagraphs (a) and (b).

        4.        Entry of an Order that, upon Popilush's request, those with notice of the injunction, including, without limitation, any and all online marketplace platforms including all Third Party Providers, shall disable and cease and shut down any use, platform, display, offer for sale, or advertisement of, or in connection with, Defendants' infringement of the Infringing Products.

5. That Popilush be awarded equitable relief under ███████████████ ████████████████ including ordering a res preservation order through an asset restraint for purposes of holding all ill-gotten gains in a constructive trust pending resolution of this lawsuit, for equitable accounting and disgorgement of any ill-gotten profits, for any restitution of any unjust enrichment Defendants have received from their willful infringement, for purposes of any equitable liens or attachment for asset tracing, and for any and all other equitable remedies, including freezing Defendants' bank accounts where assets are traceable to the conduct Popilush seeks enjoined under this statute.

6. That Popilush be awarded such damages as it shall prove at trial or otherwise against Defendants that are adequate to compensate Popilush for Defendants' infringement of the Popilush Technology, but in no event less than a reasonable royalty for the use made of the invention by the Defendants, together with interest and costs, ██████████████████

7. That the amount of damages awarded to Popilush to compensate Popilush for infringement of the Popilush Technology be increased by three times the amount thereof, as provided by ███████████████

8. That Popilush be awarded its reasonable attorneys' fees and costs under ███████████ ████

9. That Popilush be awarded preliminary and permanent injunctive relief against Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting in concert with them, restraining them from copying, reproducing, displaying, distributing, offering for sale, selling, or importing into the United States any products, content, or online materials that infringe ███████████████████████████████ ████████████████████████

27

10. That Popilush be awarded damages, profits, and statutory damages for Defendants'

███████████████████████████████████████████████████████

███████████████████████████████

11. That Popilush be awarded damages for willful ████████████████████

███████████████ in addition to actual damages and profits.

12. That Popilush be awarded its reasonable attorneys' fees and costs for █████████

████████████████████

13. That Popilush be awarded preliminary and permanent injunctive relief against Defendants to prevent further false designation of origin, confusingly similar goods, and use of Popilush's Brand, images, symbols, or graphics, pursuant to 15 U.S.C. §§ 1116(a) and 1125(a), including any asset restraint or constructive trust necessary to preserve the availability of monetary relief.

14. That Popilush be awarded Defendants' profits and Popilush's actual damages for Defendants' violations of the Lanham Act pursuant to 15 U.S.C. § 1117(a), and, in the case of willful infringement, enhanced or treble damages, increased profits, and such punitive damages as permitted by law, together with reasonable attorneys' fees and costs pursuant to 15 U.S.C. § 1117(a).

15. That Popilush be awarded restitution, disgorgement of profits, and any other equitable relief necessary to remedy Defendants' unjust enrichment as a result of their unlawful acts, and, to the extent permitted by law, punitive damages for willful and egregious misconduct.

16. That, in light of Defendants' willful infringement and unlawful conduct, Popilush be awarded enhanced damages, including treble damages, increased profits, restitution, and punitive damages to the fullest extent permitted by law.

17.     That Popilush be awarded pre- and post-judgment interest on all monetary awards to the fullest extent permitted by law.

18.     That Popilush be awarded all costs and expenses of this action, including filing fees, expert fees, and other litigation-related costs, in addition to any attorneys' fees.

19.     That Popilush be granted any and all other remedies available at law or equity to fully compensate Popilush for Defendants' wrongful acts, infringement of its Intellectual Property, and to prevent future infringement or unfair competition.

20.     That Popilush be awarded any and all other relief that this Court deems just and proper.

Dated: December 23, 2025

/s/ Nicholas J. Ronaldson
Nicholas J. Ronaldson
nronaldson@mayerbrown.com
MAYER BROWN LLP
71 S. Wacker Drive
Chicago, IL 60606
T: (312) 623-7056

Gary M. Hnath*
ghnath@mayerbrown.com
Wm. Brady Nash*
bnash@mayerbrown.com
MAYER BROWN LLP
1999 K Street N.W.
Washington, D.C. 20006
T: 1 202 263 3040
Counsel for Popilush LLC
* pro hac vice pending